## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James Krebsbach, Isable Martinez, and
Jennie Strobel,

        Plaintiffs,

v.

Jason Rewerts, Shawna Heavirland, Kwik
Trip, Inc.,

        Defendants.

No. 24-cv-4402 (KMM/LIB)

**ORDER**

Plaintiffs James Krebsbach, Isable Martinez, and Jennie Strobel jointly filed this case in Minnesota state court. Plaintiffs assert employment discrimination claims against Defendants Kwik Trip, Inc. and Shawna Heavirland as well as a claim of civil battery against Defendant Jason Rewerts. Kwik Trip removed the action to federal court asserting diversity jurisdiction, 28 U.S.C. § 1332, even though the presence of Minnesota citizens on both sides means the requirement of complete diversity is not satisfied. *Great River Ent., LLC v. Zurich Am. Ins. Co.*, 81 F.4th 1261, 1262 (8th Cir. 2023) ("If any plaintiff is a citizen of the same state as any defendant, there is not 'complete diversity' and federal courts lack jurisdiction."). According to Kwik Trip, the lack of complete diversity does not defeat jurisdiction under the circumstances because Plaintiffs improperly joined insufficiently related claims into a single suit and fraudulently joined a claim against Ms. Heavirland solely for the purpose of defeating diversity jurisdiction. This matter is before the Court on Plaintiffs' motion to remand and Defendants' motions

to dismiss and for severance. As explained below, the Court grants the motion to remand, denies the motion for severance, and declines to resolve the merits of the motion to dismiss.

## BACKGROUND

### *The Parties' Citizenship*

As indicated above, the Plaintiffs brought this case in state court asserting claims that arise under Minnesota law. Kwik Trip removed the case to federal court pursuant to 28 U.S.C. § 1441. There is no assertion that Plaintiffs' claims arise under the constitution or laws of the United States. 28 U.S.C. § 1331. Instead, Kwik Trip removed the case based on diversity jurisdiction. 28 U.S.C. § 1332. However, the parties are not completely diverse. The Plaintiffs are citizens of Minnesota (Krebsbach and Martinez) and California (Strobel). The Defendants are citizens of Minnesota (Heavirland and Rewerts) and Wisconsin (Kwik Trip).

Because there are plaintiffs and defendants in this case who are citizens of the same state, this Court cannot exercise diversity jurisdiction unless: (1) Plaintiffs fraudulently joined a claim against a nondiverse defendant for the purpose of defeating diversity jurisdiction; and (2) Plaintiffs fraudulently misjoined claims involving nondiverse defendants to claims against a diverse defendant to defeat complete diversity. *In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, MDL No. 13-2441

(DWF/DJF), 2023 WL 6514996, at *2 & n.3 (D. Minn. Oct. 5, 2023).[1] To address these issues requires consideration of the legal viability of a claim that Defendants argue was fraudulently joined and evaluation of the relationship between the claims asserted by the Plaintiffs.

### *Plaintiffs' Claims*

The Plaintiffs in this case have asserted several employment discrimination claims and one claim of civil battery. Mr. Krebsbach asserts two claims against Kwik Trip: a reprisal claim under the Minnesota Human Rights Act (MHRA) and a retaliation claim under the Minnesota Whistleblower Act (MWA). Compl. ¶¶ 229–50 (Count II), 268–76 (Count V), Dkt. No. 1-1. Ms. Martinez asserts claims against Kwik Trip for sex discrimination, reprisal, and pregnancy discrimination under the MHRA, and a retaliation claim against Kwik Trip under Minnesota's pregnancy accommodation statute. *Id.* ¶¶ 217–28 (Count I), 229–50 (Count II), 251–59 (Count III), 260–67 (Count IV). Ms. Martinez also asserts an individual reprisal claim against Ms. Heavirland under the MHRA. *Id.* ¶¶ 229–50 (Count II). Ms. Strobel asserts claims against Kwik Trip for sex discrimination and reprisal. *Id.* ¶¶ 217–28 (Count I), 229–50 (Count II). Ms. Strobel also

---

[1] "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). Fraudulent misjoinder "occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, or a resident defendant, even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other." *In re Stryker*, 2023 WL 6514996, at *2.

asserts a common law tort claim for civil battery against Mr. Rewerts and against Kwik

Trip under the doctrine of *respondeat superior*.[2] *Id.* ¶¶ 277–83 (Count VI).

### Factual Background

Krebsbach began working for Kwik Trip as an Assistant Store Leader in May

2016. He briefly resigned in January 2018, but was rehired that May. Krebsbach was still

working as an Assistant Store Leader when Kwik Trip hired Christopher Lewis to work

as a Guest Service Coworker at Krebsbach's store. During Lewis' employment with

Kwik Trip, Krebsbach received reports that Lewis was acting strange, stalking

coworkers, and staring at women in the store. When Krebsbach received those

complaints, he admonished Lewis for his conduct and insisted that Lewis change his

behavior. However, Lewis' conduct continued, including threatening Krebsbach.

Krebsbach reported Lewis' behavior and his coworkers' concerns to his supervisor, who

said she would investigate the matter. Meanwhile, Lewis continued to harass his

coworkers. Krebsbach reported Lewis' ongoing conduct to Defendant Shawna

Heavirland, Kwik Trip's District Leader. After making repeated complaints about Lewis'

behavior for months, Kwik Trip finally terminated Lewis' employment.

In May 2021, Kwik Trip hired Rewerts as a Guest Services Coworker. Although

Rewerts had a prior conviction for criminal sexual conduct, the position he filled had him

---

[2] Plaintiffs' statutory claims are found in the following provisions: (1) MHRA sex
discrimination, Minn. Stat. §§ 363.03, subd. 13, 363A.08, subd. 2; (2) MHRA reprisal, Minn.
Stat. §§ 363A.15, 181.932, subd. 1; (3) MWA retaliation, Minn. Stat. § 181.939, subd. 2;
(4) MHRA pregnancy discrimination, Minn. Stat. §§ 363A.08, subds. 2 & 3, 363A.03, subd. 42;
and (5) pregnancy accommodation retaliation, Minn. Stat. § 181.939, subd. 2.

interact with coworkers and the public during overnight shifts without significant supervision. "Almost immediately after Rewerts began his employment with Kwik Trip, he began to sexually harass, assault, and batter coworker Jennie Strobel during overnight shifts." Compl. ¶ 81. Rewerts made offensive comments to Strobel and engaged in unwelcome physical contact with her, including touching her with his genitals.

Rewerts also subjected coworker Isabel Martinez to sexual harassment after she began working at the same store in February 2022. Rewerts made sexualized comments to Martinez while the two were alone together at work, described sex acts in graphic detail, and sent her several unwelcome sexually explicit text messages. Although both Strobel and Martinez told Rewerts to stop engaging in such offensive behavior, he continued to sexually harass both Plaintiffs.

Martinez and Strobel allege that they reported Rewerts' conduct to Store Leader Jen Schroden many times. Despite these repeated reports, Schroden failed to take remedial action to stop the harassment. Without conducting any investigation, Schroden claimed that Rewerts had engaged in no misconduct. Instead, Schroden instructed Martinez and Strobel to stop talking with their coworkers about Rewerts' sexual harassment.

In September 2022, Guest Services Coworker Ashley Brassard, who is not a party to this litigation, was working in the same store with Rewerts. At the time, Brassard was a nursing mother. During her shift, she needed to express breast milk and went to a designated office to do so. However, the door to the office contained a small window that would allow others to look inside. On September 13, 2022, Brassard saw someone

looking through the window while she was expressing milk, and told others that she thought it was Rewerts who was peeping through the window. Martinez confirmed that she had seen Rewerts looking through the window. Brassard reported the incident to Schroden later that day, and although Schroden said she would investigate the issue, Brassard never heard back from her.

Brassard told Krebsbach about the incident a few days after it occurred, and Krebsbach reviewed security footage with Brassard. The footage confirmed that Rewerts was, in fact, looking through the window at Brassard. Krebsbach reported the incident to Schroden. However, Schroden did not discipline Rewerts for his conduct. Instead, she admonished Krebsbach for watching the security footage with Brassard, claiming that she did not believe Rewerts was looking at Brassard, but also allegedly acknowledging that Rewerts had, in fact, peeped into the room where Brassard was expressing breast milk. Schroden also spoke to Martinez about the incident, and Martinez confirmed that she had seen Rewerts looking through the office door window at Brassard. Martinez also told Schroden that Rewerts said he was "hooked" in an apparent reference to looking at Brassard's exposed breasts. Nevertheless, Kwik Trip did not take any remedial action nor discipline Rewerts.

Plaintiffs allege that on October 3, 2022, Krebsbach was reprimanded for reporting this incident. Schroden and Heavirland called Krebsbach to a meeting and raised concerns with Krebsbach's performance. Plaintiffs allege that such concerns were pretext. Krebsbach responded to each alleged performance concern and explained why they were false, unwarranted, or unreasonable. He believed the issues were being raised

in retaliation for his reports of Rewerts' harassment and peeping on Brassard. During the meeting, Krebsbach asked if Schroden and Heavirland knew that Rewerts was a convicted sex offender, and Schroden eventually told Krebsbach that Rewerts needed to be given "a chance to improve." Because neither Heavirland nor Schroden appeared willing to address Rewerts' harassment of other Kwik Trip employees, Krebsbach reached out to Kwik Trip's HR department and reported the failure to take remedial action regarding Rewerts' conduct.

Krebsbach next reported to Schroden that Rewerts used his vehicle to ram the car of another coworker in the parking lot of the Kwik Trip store. Additionally, Krebsbach asked Schroden for an update on her investigation into the earlier allegations of Rewerts' harassment of Brassard. Schroden did not discipline Rewerts and said that HR told her not to get involved. On October 18, 2022, the day after Krebsbach asked Schroden for an update, Heavirland demoted Krebsbach and transferred him to another store. This resulted in a reduction of his hourly rate of pay and a longer commute.

Meanwhile, Rewerts allegedly continued to harass Martinez and Strobel. When Strobel reported her concerns to Kwik Trip's HR department in early 2023, including that Schroden had failed to take remedial action regarding Rewerts, HR told her she needed to file a report with Schroden before HR could intervene. Strobel then took the issue up with Kwik Trip's Regional Leader Justin Pope, but Pope did not follow through on his statement that he would address the situation. In early April 2023, Rewerts made inappropriate comments again to Strobel and sent Martinez inappropriate, sexually

charged text messages. When Martinez reported these incidents to Schroden, Schroden did nothing to stop Rewerts' ongoing harassment.

On April 29, 2023, Schroden and Assistant Store Leader Kim Clubb told Strobel that they found no evidence to conclude that Rewerts sexually harassed her. They also told Strobel to stop reporting Rewerts' conduct because he harassed Martinez more than Strobel, claimed that "the case" against Rewerts was "closed," demanded that Strobel "drop it," and criticized Strobel for performance concerns that were allegedly discovered during their investigation into Rewerts' sexual harassment. They placed documentation of these alleged performance issues in Strobel's personnel file. On May 1, 2023, in a meeting with Martinez, Schroden said that there was no evidence to corroborate her reports of sexual harassment, instructed Martinez to stop discussing Rewerts' sexual harassment with other Kwik Trip employees, criticized Martinez for alleged performance issues discovered during the investigation of Rewerts' conduct, and papered Martinez's personnel file with those performance concerns. Plaintiffs allege that the assertion that there was no evidence of Rewerts' harassment of Martinez and Strobel is false and that their personnel files were papered in retaliation for their complaints about sexual harassment in the store.

Because Strobel dreaded going to work with Rewerts and Kwik Trip failed to take action to stop Rewerts' continued harassment, Strobel gave Kwik Trip two-week notice that she would resign her employment. During the last few weeks she worked at the store, Rewerts continued to engage in inappropriate conduct toward Strobel. Martinez stopped reporting Rewerts' harassing conduct because no action had been taken to stop it, and she

experienced emotional distress and difficulty sleeping because of Rewerts' ongoing harassment.

In July 2024, Martinez shared with Schroden that she was pregnant, that her pregnancy was high-risk, and that she needed certain pregnancy accommodations, including being allowed to avoid working with cleaning chemicals and other irritants. Kwik Trip granted those accommodations without requiring a note from a doctor. On August 30, 2024, Martinez was scheduled to work the overnight shift, and around 4:00 a.m. on August 31, 2024, she and her colleagues smelled an odor they believed to be gas. Martinez reported the smell of gas to Kwik Trip's Operations Support, which told her and her coworkers to shut down the store, exit the building, wait outside, and leave the doors open. Martinez and her coworkers complied.

While police and firefighters arrived at the store to look into the reported concern of a gas leak, Martinez felt sick and vomited in a trash bin outside the store. Martinez needed to take temporary leave to address her pregnancy-related health concerns, and she went to a local hospital where she was evaluated by a health care provider. The provider gave Martinez a note indicating that she should be excused from work for that day.

Martinez returned to work later in the evening of August 31st in accordance with her schedule. She told her only other colleague working that night, a coworker named Faith, that she was again feeling nauseous. An hour later, Martinez got sick again and threw up in a trash bin on her way to the bathroom. Faith also vomited in the bathroom. Martinez called Kwik Trip's Operations Support to figure out what she should do because she needed an accommodation of temporary leave to address her pregnancy-

related illness. Operations Support told Martinez that she and Faith could not be in the store if they were sick, so they should close the store until other employees could come to work in their place. Faith called Schroden for assistance, but Schroden told Faith that Kwik Trip never closes its doors and she needed to figure out a solution.

Martinez alleges that "[u]pon information and belief, Operations Support subsequently informed Heavirland what was happening, and Heavirland directed Schroden to go to the store to relieve Martinez and Faith." Compl. ¶ 204. Eventually, Schroden and another employee relieved Martinez and Faith, who left the store and went home.

A few days later, on September 3, 2024, Martinez and Kwik Trip engaged in negotiations regarding her claim that she was sexually harassed by Rewerts at work, but the settlement efforts were unsuccessful. *Id.* ¶¶ 206–07. On September 16, 2024, Heavirland ordered Martinez to attend a meeting and suspended her without pay. Heavirland allegedly berated Martinez for thirty minutes for the events that occurred at the store on August 30–31. Heavirland allegedly "insinuated that Martinez . . . acted improperly during her overnight shift" on August 30, even though Heavirland knew Martinez smelled an odor they believed to be gas, that Operations Support told Martinez to close the store, that Martinez was pregnant, was sick, and vomited, and that Martinez went to the hospital. Heavirland also suggested that Martinez acted improperly during her overnight shift on August 31, even though Heavirland knew Martinez was pregnant and that she and Faith both vomited at work. Heavirland also allegedly knew that Martinez

and Faith closed the store for only a brief period because they could not work in the kitchen and were trying to find other employees to cover their shifts.

Heavirland told Martinez that she was being suspended because video footage captured by Kwik Trip security cameras showed Martinez using her phone, using profanity, and discussing personal matters at work. Plaintiffs allege these were pretextual reasons for terminating Martinez's employment because other Kwik Trip employees engage in the same conduct with impunity. Plaintiffs allege Martinez was singled out because she had requested pregnancy accommodations, reported sexual harassment in the workplace, and refused to settle her claims under terms favorable to Kwik Trip and Heavirland. Heavirland admitted that she had not reviewed all of Kwik Trip's video and audio recordings to see if other employees had engaged in the same or similar conduct as Martinez. On September 18, 2024, Heavirland informed Martinez that her employment with Kwik Trip was terminated for alleged violations of company policy.

## DISCUSSION

Plaintiffs ask the Court to remand this matter to state court, arguing that none of their claims was fraudulently joined and that all their claims are sufficiently related to proceed in a single suit. If Plaintiffs are correct, the Court cannot exercise diversity jurisdiction over this matter and must remand the case to state court because complete diversity is lacking. Defendants oppose remand and ask the Court to sever the Plaintiffs claims from one another based on the doctrines of fraudulent joinder and fraudulent misjoinder. Specifically, Defendants argue that there is no colorable basis for Ms. Martinez's individual MHRA reprisal claim against the nondiverse Defendant

11

Shawna Heavirland. Defendants also argue that Plaintiffs fraudulently joined Ms. Strobel's civil battery claim against the nondiverse Defendant Jason Rewerts. And Defendants contend that the Plaintiffs' claims are not sufficiently related to one another to be joined together in a single suit and should, therefore, be severed into several proceedings.

As explained below, the Court finds that Defendants have not shown the civil battery claim against Rewerts was fraudulently joined and concludes that all Plaintiffs' claims are sufficiently related to be joined in a single action. Consequently, the Court finds that complete diversity is lacking and this matter must be remanded to state court.

## I.    Legal Standard

### *Removal and Remand*

A defendant may remove an action filed in state court to federal district court when the federal court would have "original jurisdiction." 28 U.S.C. § 1441(a). Once in federal court, a plaintiff may bring a motion to remand a removed case back to state court, "and the case should be remanded if it appears that the district court lacks subject matter jurisdiction." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010) (citing 28 U.S.C. § 1447(c)). On a motion to remand, the defendant has the burden to show that the federal court has jurisdiction. *Id.*

Among the cases falling within the federal courts' original jurisdiction is a civil action where the amount in controversy exceeds $75,000 and where the suit is "between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). This is commonly known as "diversity jurisdiction." For a case to be removable based on diversity jurisdiction, there

must be "[c]omplete diversity of citizenship," meaning that "no defendant holds citizenship in the same state where any plaintiff holds citizenship." *In re Prempro*, 591 F.3d at 620 (quoting *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007)). Thus, complete diversity of citizenship is a prerequisite to removal of a case, and a federal district court should grant a motion to remand where complete diversity is lacking unless an exception applies.

### Fraudulent Joinder and Misjoinder

This case involves two doctrines that courts have recognized as exceptions to the complete diversity rule: fraudulent joinder and fraudulent misjoinder.[3] *In re Stryker*, 2023 WL 6514996, at *2 n.3. "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." *In re Prempro*, 591 F.3d at 620. In deciding whether a nondiverse defendant has been joined for the purpose of defeating federal jurisdiction, the court may consider both the pleadings and supporting affidavits. *In re Baycol Prods. Litig.*, No. MDL 1431 (MJD), 2003 WL 21223842, at *1 (D. Minn. May 27, 2003). "A defendant alleging fraudulent joinder has the burden of demonstrating that the plaintiff joined a party to destroy diversity jurisdiction." *Banbury v. Omnitrition Int'l, Inc.,* 818 F. Supp. 276, 279 (D. Minn. 1993). To meet that burden, the defendant must prove that the claim against the non-diverse party has "no reasonable basis in fact and law." *Knudson v. Systems Painters,*

---

[3] The Eighth Circuit has neither accepted nor rejected the doctrine of fraudulent misjoinder expressly, but it has been applied by courts in the District of Minnesota. *In re Stryker*, 2023 WL 6514996, at *2.

*Inc.*, 634 F.3d 968, 980 (8th Cir. 2011) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806,

810 (8th Cir. 2003). This is a stricter standard than that required to show that a claim

should be dismissed under Rule 12(b)(6). *E.g.*, *Welk v. GMAC Mortg., LLC*, 850 F. Supp.

2d 976, 995 (D. Minn. 2012). If a defendant shows that a nondiverse party has been

fraudulently joined, the district court may "assume jurisdiction over a facially nondiverse

case temporarily and . . . dismiss the nondiverse party from the case and retain subject

matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Servs., LLC*, 699

F.3d 1027, 1031 (8th Cir. 2012), *as corrected* (Nov. 28, 2012).

Fraudulent misjoinder, on the other hand, involves combination of unrelated

claims into a single suit.

> [It] occurs when a plaintiff sues a diverse defendant in state
> court and joins a viable claim involving a nondiverse party, or
> a resident defendant, even though the plaintiff has no
> reasonable procedural basis to join them in one action
> because the claims bear no relation to each other. In such
> cases, some courts have concluded that diversity is not
> defeated where the claim that destroys diversity has "no real
> connection with the controversy" involving the claims that
> would qualify for diversity jurisdiction.

*In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*, 2023 WL 6514996,

at *2 (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)).

Fraudulent misjoinder examines whether plaintiffs and defendants in a multi-party

case have been properly joined under Rule 20(a) of the Federal Rules of Civil Procedure.

Under Rule 20(a), multiple plaintiffs may join in an action if "(A) they assert any right to

relief . . . with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences; and (B) any question of law or fact common to all plaintiffs

will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)–(B). And multiple defendants may be joined in one action if "(A) any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). "The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). District courts have discretion to determine whether parties have been properly joined into a single action. *Id.*

Generally, courts use a "case by case approach" to determine "whether a particular factual situation constitutes a single transaction or occurrence. . . ." *Id.* at 1333. "[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* However, "a plaintiff cannot join, in a single lawsuit, multiple claims against different defendants related to events arising out of different transactions or occurrences." *Cook v. City of Pike Cnty.*, No. 2:23-CV-00033 SEP, 2024 WL 1217390, at *11 (E.D. Mo. Mar. 21, 2024).

In the case of misjoinder, a court "may, at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "Rule 21 is 'most commonly invoked to sever parties improperly joined under Rule 20.'" *Ksepka v. U.S. Postal Serv.*, No. 24-cv-310 (CCC) (MAH), 2025 WL 226332, at *2 (D.N.J. Jan. 16, 2025) (quoting *Lopez v. City of Irvington*, No. 05-5323, 2008 WL 565776, at *3 (D.N.J. Feb. 28, 2008)). When deciding whether to sever claims under Rule 21, courts look to the

same two-part test governing permissive joinder under Rule 20(a): "claims brought against defendant to be joined must stem from the same transaction or occurrence, and second, they must share a common question of law or fact." *Id.*

## II.    Analysis

As noted above, the parties in this case are not completely diverse: two of the Plaintiffs (Martinez and Krebsbach) and two Defendants (Heavirland and Rewerts) are citizens of Minnesota. Defendants argue that the claims against Heavirland (Martinez's MHRA reprisal claim) and Rewerts (Strobel's civil battery claim) were fraudulently joined for the purpose of defeating diversity jurisdiction. If Defendants are correct, then the Court should temporarily take jurisdiction over the action, dismiss Heavirland and Rewerts from the case, and retain jurisdiction over the remaining claims. *See Murphy*, 699 F.3d at 1031. If, however, Defendants are wrong about fraudulent joinder of either Heavirland or Rewerts, then complete diversity would be lacking. And if the Plaintiffs properly joined their claims together under Fed. R. Civ. P. 20, such that there has been no fraudulent misjoinder, then the Court would be required to remand the entire suit to state court.

The Court finds that Defendants have failed to show that the nondiverse Defendant Jason Rewerts was fraudulently joined. In addition, the Court concludes that Plaintiffs' claims against all Defendants are sufficiently related and they have not been fraudulently misjoined together in a single suit. Accordingly, the Court declines to sever this suit into separate actions, finds it unnecessary to determine whether there is a colorable claim against Defendant Heavirland, and remands this matter to state court.

## A. Fraudulent Joinder – Rewerts

Defendants argue that Plaintiffs fraudulently joined Defendant Rewerts to this suit for the purpose of defeating diversity jurisdiction. The only claim against Rewerts is the civil battery claim brought by Ms. Strobel, and Strobel asserts that Kwik Trip is liable for Rewerts' civil battery under the doctrine of *respondeat superior*. Under Minnesota law a battery involves (1) an offensive contact, and (2) an intent to cause the offensive or harmful contact. *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 966 (8th Cir. 2023) (citing *Johnson v. Morris*, 453 N.W.2d 31, 40 (Minn. 1990)).

As noted, the doctrine of fraudulent joinder asks a court to consider whether the plaintiff has asserted a frivolous or illegitimate state law claim against a nondiverse defendant. In connection with Strobel's civil battery claim against Rewerts, the question of fraudulent joinder is whether the complaint sets forth a reasonable basis in fact or law for such a claim. The complaint in this case unquestionably does just that. Indeed, the allegations plainly show that Rewerts intentionally engaged in contact with Strobel on more than one occasion and that such contact was unwelcome and offensive. Defendants do not suggest otherwise. The Court concludes that Defendants have failed to show that Strobel's civil battery claim against Rewerts lacks a reasonable basis in law or fact.

Defendants next argue that Strobel's claim of civil battery "is improperly joined against Kwik Trip because, contrary to Strobel's conclusory assertions, she cannot establish that Rewerts' alleged conduct was either foreseeable or in the scope of his employment, so *respondeat superior* does not apply." Dkt. No. 24 at 25. And Defendants contend that even if Rewerts' conduct was "foreseeable and in the scope of [his]

employment . . . because Strobel has alleged these actions took place at the workplace and were reasonably foreseeable, the Minnesota Workers' Compensation Act ('WCA') preempts her claim." *Id.* at 25.

For several reasons, the Court finds these arguments unpersuasive. First, these arguments do not really implicate the issue of fraudulent joinder at all. Indeed, Kwik Trip is alleged to be a citizen of Wisconsin, and is, therefore, completely diverse from the two Minnesota Plaintiffs and the lone California Plaintiff. Consequently, even if the Court were to find that that the civil battery claim asserted by Strobel against Kwik Trip lacked a colorable basis, that would have no bearing on the question of fraudulent joinder of Rewerts.

Second, Defendants' insistence that Strobel's claims against Rewerts do not implicate the doctrine of *respondeat superior* depends upon references in their briefing to an "ongoing personal relationship between Strobel and Rewerts." Purportedly, that relationship undermines her civil battery claims, and that is demonstrated by text messages Strobel allegedly sent to Rewerts during the relevant time period. Dkt. No. 24 at 7–8 n.3; *id.* at 25. Although the Court is permitted to view materials outside the pleadings in determining whether a defendant has been fraudulently joined, *see Welk*, 850 F. Supp. 2d at 995, Defendants have offered nothing more than counsel's statement in legal memoranda regarding this personal relationship. The Court finds no merit in this argument and notes that Defendants' assertion that Strobel repeatedly asked Rewerts for a ride to work via text messages, Dkt No. 24 at 7–8 n.3, does nothing to suggest that she also consented to being touched by him.

18

Finally, regarding Defendants' assertion that any civil battery claim against Kwik Trip is preempted by the Minnesota WCA, the Court finds that issue is not amenable to resolution without a more developed factual record. In support of WCA preemption, Defendants cite two summary judgment decisions made on a more fully developed factual record that bear little resemblance to the procedural posture of this case.[4] Here, there is a factual dispute about whether Rewerts' conduct alleged to be a civil battery was foreseeable by Kwik Trip and whether it occurred in the course of his employment. As a result, the Court cannot now resolve whether the WCA preempts Strobel's *respondeat superior* civil battery claim against Kwik Trip. *Cf. Smith v. Dolgencorp, LLC*, No. 4:23-cv-00471-DGK, 2023 WL 7491858, at *2–3 (W.D. Mo. Nov. 13, 2023) (finding issues of fact prevented the court from resolving question of preemption that turned on whether the plaintiff's battery claim arose out of the employment relationship and remanding the case to state court because the fraudulent-joinder argument hinged on the premature preemption issue).

Accordingly, the Court concludes that Defendants have not shown that the civil battery claim lacks a reasonable basis in law or fact, nor that Rewerts was joined as a nondiverse defendant solely for the purpose of defeating diversity jurisdiction. Thus, to the extent Defendants oppose remand on the ground that Rewerts was fraudulently joined to defeat jurisdiction, the Court disagrees.

---

[4] Dkt. No. 24 at 26 (citing *Mennis v. Prime Hosp. Corp.*, No. 03-cv-4191 (RHK/AJB), 2004 WL 1987229, at *12 (D. Minn. Sept. 7, 2004), and *Wendt v. Charter Commc'ns, LLC*, No. 13-cv-1308 (RHK/TNL), 2014 WL 7357247, at *7 (D. Minn. Dec. 23, 2014)).

**B. Fraudulent Misjoinder**

Defendants argue that the Court should not remand this matter to state court and should instead sever Plaintiffs' claims into several separate proceedings because Plaintiffs' claims are improperly joined together under Fed. R. Civ. P. 20. Defendants assert that the various claims asserted by the Plaintiffs do not arise out of the same transaction or occurrence or from the same series of transactions or occurrences and all they have in common is that the Plaintiffs worked at the same store. They argue that Krebsbach's claims against Kwik Trip, Martinez's claims against Kwik Trip and Heavirland, and Strobel's claims against Kwik Trip and Rewerts should be severed into multiple actions as follows: Krebsbach's claims against Kwik Trip should proceed as one suit in federal court; Martinez's claims against Kwik Trip should proceed as a second suit in federal court, while her claim against Heavirland should be dismissed or proceed in state court as another suit; and Strobel's claims against Kwik Trip and Rewerts should be severed into yet another proceeding in federal court. For the reasons that follow, the Court disagrees.

The Court finds that Defendants have failed to demonstrate that the doctrine of fraudulent misjoinder requires severance of the Plaintiffs' claims into multiple, separate proceedings. As an initial matter, the Court notes that the Eighth Circuit Court of Appeals has expressly chosen not to accept or reject "fraudulent misjoinder" as an exception to the complete diversity rule. *In re Prempro*, 591 F.3d at 622. However, when the Eleventh Circuit adopted fraudulent misjoinder as an exception to the requirement of complete diversity, it did not hold that every misjoinder constitutes "fraudulent misjoinder." *Id.* at

20

621 (discussing *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir. 1996)).

Indeed, "[t]he Eleventh Circuit cautioned that 'mere misjoinder' is not fraudulent

misjoinder." *Id.* (quoting *Tapscott*, 77 F.3d at 1360). Instead, under *Tapscott*, misjoinder

defeats a plaintiff's motion to remand only where the misjoinder was "so egregious as to

constitute fraudulent misjoinder." 77 F.3d at 1360.

District courts considering the fraudulent misjoinder doctrine have diverged over

whether to adopt the *Tapscott* rule requiring misjoinder to be "egregious." *In re Baycol*

*Prods. Liab. Litig.*, MDL No. 1431 (MJD), 2003 WL 22341303, at *3 (D. Minn. Jan. 1,

2003) (collecting cases). On the one hand, some courts don't require a showing of

egregiousness because a defendant's right to remove should not be defeated by a

plaintiff's misjoinder of unrelated claims against diverse and nondiverse parties. *See id.*

(discussing *In re: Rezulin Products Liability Litigation*, 168 F.Supp.2d 136, 147–48

(S.D.N.Y. 2001)); *see also In re Stryker*, 2003 WL at *2 n.5 (finding a defendant's

statutory right of removal outweighed the plaintiff's choice of forum). Other courts have

required a showing of egregiousness or declined to apply fraudulent misjoinder at all,

suggesting that treating mere misjoinder as an exception to complete diversity would

constitute an unwarranted expansion of federal courts' subject matter jurisdiction. *See In*

*re Prempro*, 591 F.3d at 621–22 (discussing cases criticizing the fraudulent misjoinder

doctrine, including *Rutherford v. Merck & Co.,* 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006)

(holding that *Tapscott* is an improper expansion of federal diversity jurisdiction, and

misjoinder should be resolved by a state court)).

Because the Eighth Circuit has declined to adopt fraudulent misjoinder as an exception to the requirement of complete diversity of citizenship, this Court is not inclined to wade into the debate among the authorities on whether a finding of egregiousness or bad faith is required. However, if a showing of egregiousness is necessary, Defendants haven't demonstrated it here. They point to nothing in the record indicating that the joinder of Plaintiffs' claims in this case is "so egregious as to constitute fraudulent misjoinder." *Tapscott*, 77 F.3d at 1360. As explained in more detail below, the Court cannot say that Plaintiffs' "claims have 'no real connection' to each other such that they are egregiously misjoined." *In re Prempro*, 591 F.3d at 623 (citing *Tapscott*, 77 F.3d at 1371). In fact, the Court finds that the joinder of Plaintiffs claims does not run afoul of Rule 20(a)(1) at all, let alone egregiously.

Defendants simply have not demonstrated Plaintiffs' claims are insufficiently related to proceed as a single action. To decide whether the Plaintiffs' claims were properly joined in a single action under Rule 20, the question before the Court is whether the claims arise out of the same occurrence or series of occurrences. The Court asks whether the allegations concern logically related events, which the Court determines based on the specific circumstances of this case. *See Mosley*, 497 F.2d at 1333. And joinder is appropriate under Rule 20 if any question of law or fact common to all plaintiffs will arise in the action. Fed. R. Civ. P. 20(a)(1)(B).

Although Defendants suggest that there is nothing at all connecting any Plaintiff's claims to those made by any other Plaintiff, this overlooks the clear relationship between the claims. All three plaintiffs worked at the same store, reported to the same supervisors,

and claim to have been wrongfully terminated in connection with reports of sexual harassment. The through-line tying Plaintiffs' claims together is each individual's assertion that when he or she raised the issue of a specific employee—Rewerts—engaging in harassing and inappropriate conduct, Kwik Trip failed to take any meaningful action to stop it. The Court finds that this constitutes a series of occurrences out of which all three Plaintiffs' claims arise. Krebsbach, Martinez, and Strobel each raised concerns to Store Leader Schroden about Rewerts' inappropriate workplace behavior. Schroden is alleged by each to have taken no remedial action in response to the reports. Similarly, when Ms. Heavirland was made aware of complaints about Rewerts' conduct she was unwilling to address the harassment. Further, Martinez and Krebsbach allege that they were subject to retaliation or reprisal when they reported Rewerts' conduct to their superiors, and Strobel alleges that she was forced to resign her employment (i.e., was constructively discharged) when Kwik Trip repeatedly failed to take action to stop Rewerts' harassment. Because "the transaction/occurrence requirement prescribed by Rule 20(a) is not a rigid test and is meant to be 'read as broadly as possible whenever doing so is likely to promote judicial economy,'" the Court finds that test is satisfied here by the relationship between Plaintiffs' claims. *In re Prempro*, 591 F.3d at 622 (parenthetically quoting 7 Charles A. Wright et al., *Federal Practice and Procedure,* § 1653, at 415 (3d ed. 2001)).

As Defendants argue, it is true that there will likely be distinct factual and legal issues that arise with respect to each Plaintiff's claims. For example, only Strobel's employment claims against Kwik Trip are likely to require consideration of the issue of

23

constructive discharge. And the proof of any retaliatory motive is likely to be distinct from one plaintiff to the next. But proper joinder of the claims of multiple plaintiffs under Rule 20 does not require that every issue of fact and law concerning each plaintiff will be the same. Joinder requires there to be any question of law or fact common to all plaintiffs that will arise in the action. Fed. R. Civ. P. 20(a)(1)(B). The common question of fact binding each Plaintiff's claims in this case to the other is how Kwik Trip and its supervisory personnel allegedly failed to respond to reports of Rewerts' harassment of female co-workers.

There is, perhaps, one set of claims by one Plaintiff that does not originate from this series of occurrences. Martinez's claims of pregnancy discrimination and the alleged violations of the pregnancy accommodation statute by Kwik Trip do not stem from Rewerts' alleged harassment of Martinez or other female employees, nor from Martinez's reporting of Rewerts' conduct to her supervisors. However, considering Rule 20's pragmatic purpose through promoting convenience and preventing multiple lawsuits, *Mosley*, 497 F.2d at 1332, the Court does not find severing these claims from the remainder of the case to be in the interests of justice. Among other things,, the timing of Martinez's pregnancy claims in relation to the harassment claims points to efficiency in keeping those matters together.

In sum, the Court finds that Defendants have failed to demonstrate that either fraudulent joinder or fraudulent misjoinder occurred here. As a result, the Court finds that there is no barrier to the case proceeding as a single suit, and Rewerts' presence in the suit means that the requirement of complete diversity is not satisfied. Therefore, the

24

Court finds it unnecessary to address the argument raised by Defendants that

Ms. Heavirland should be dismissed under the doctrine of fraudulent joinder. Given the

absence of controlling authority from the Minnesota Supreme Court or clear guidance

from the Minnesota Court of Appeals on the scope of individual liability claims under the

MHRA's reprisal statute, the Court finds it better to leave to the state courts the questions

presented by Defendants' arguments that the reprisal claim against Heavirland lacks

merit.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**

1.    Plaintiff's Motion to Remand, Dkt. No. 16, is **GRANTED**.

2.    Defendant Shawna Heavirland's Motion to Dismiss, Dkt. No. 7, is

**DENIED** as moot.

3.    Defendants' request for severance, Dkt. No. 24, is **DENIED**.

4.    This matter is **REMANDED** to Minnesota District Court, County of

Stearns, Seventh Judicial District.


 Date: April 7, 2025                              *s/Katherine Menendez*
                                                 Katherine Menendez
                                                 United States District Judge

25